UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JING LIU,<br><br>                             Plaintiff,<br><br>                 -against-<br><br>SCHULTE ROTH & ZABEL LLP<br><br>                            Defendant | Docket No. 23-cv-10781<br><br>**<u>COMPLAINT</u>**<br><br>[Demand for Jury Trial] |

Plaintiff JING LIU, by and through her attorneys PACIFIC JUSTICE INSTITUTE, upon knowledge unto herself and upon information and belief at to other matters alleges as follows:

## <u>NATURE OF THE ACTION</u>

1.     Plaintiff Jing Liu (Hereinafter "Plaintiff") brings this action against Defendant Schulte Roth & Zabel LLP (Hereinafter "Defendant"). This action is based on violations of Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e *et seq.*), New York City Human Rights Law (NYCHRL) – Administrative Code of the City of New York §§ 8-101 *et seq.,* and the New York State Human Rights Law – New York Executive Law, Article 15, § 296 – Unlawful Discriminatory Practices.

2.     The basis of this complaint is that the Plaintiff requested a reasonable accommodation against taking the COVID-19 vaccines, as the vaccines were against Plaintiff's sincerely held religious beliefs.  During the COVID-19 pandemic, the Plaintiff was allowed to work from home for two years.

3.      When Plaintiff was told by the employer that the employees would need to be vaccinated, the Plaintiff submitted a religious exemption application, requesting an accommodation that the employer continue allowing her to work from home.  The Defendant denied Plaintiff's exemption and accommodation request.

4.      On March 4, 2022, Defendant emailed Plaintiff a notice of termination, which became effective on March 14, 2022.

5.      The adverse employment actions against the Plaintiff occurred because the Plaintiff refused to take the COVID-19 vaccine, which would have been a violation of her sincerely held religious belief.

## PARTIES

### Plaintiff

6.      Plaintiff Jing Liu ("Plaintiff") is a 60-year-old female, currently residing in the state of Florida.   Plaintiff formerly resided in Jersey City, New Jersey during the time of her employment.

7.      Plaintiff was at all times relevant herein an employee of Defendant Schulte Roth & Zabel, LLP ("Defendant") from November 2019 to March 2022.

8.      Plaintiff was an "employee" within the meaning of Title VII of the 1964 Civil Rights Act ("Title VII"); New York State Human Rights Law ("NYSHRL"); and New York City Human Rights Law ("NYCHRL").

### Defendant

9.      Defendant Schulte, Roth and Zabel LLP is a private law firm, with offices in New York, Washington, DC, and London.  The headquarters is located at 919 Third Avenue, New York, New York 10022.

10.     Defendant is a limited liability partnership (LLP) in New York and engages in business in New York State. Plaintiff was employed at the New York Office.

11.     Defendant is at all times relevant herein Plaintiff's "employer" within the meaning of Title VII of the 1964 Civil Rights Act ("Title VII"); New York State Human Rights Law ("NYSHRL"); and New York City Human Rights Law ("NYCHRL").

## JURISDICTION AND VENUE

12.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, as the district courts have original jurisdiction over federal questions raised under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

13.     This Court has supplemental jurisdiction over Plaintiff's related state claims pursuant to 28 U.S.C. § 1367(a).

14.     Venue is proper in the Southern District of New York under 28 U.S.C. § 1391(b), in that the Defendant's office and headquarters with whom the Plaintiff had dealings is in the Southern District and Defendant maintains significant operations within the Southern judicial district.

## PROCEDURAL REQUIREMENTS AND EXHAUSTION OF ADMINISTRATIVE REMEDIES

15.     The Plaintiff timely filed charges of discrimination with the United States Equal Employment Opportunity Commission ("the EEOC")  - Charge #520-2022-04792.

16.     On September 18, 2023, the EEOC issued a Notice of Right to Sue which was received by the Plaintiff on September 18, 2023.

17.     The Plaintiff has timely filed this instant action and complied with all administrative and procedural requirements necessary to file this lawsuit.

## STATEMENT OF FACTS

### Plaintiff's background and work history with Defendant

18.     Prior to embarking on a professional career in the legal field, Plaintiff secured several degrees during her academic career.  In July 1983, Plaintiff received a Bachelor of Arts degree from Xiamen University, located in the People's Republic of China. In November 1986, Plaintiff also received her Master of Arts degree from Xiamen University. Then on June 7, 1991, Plaintiff received her Master of Arts degree from the Graduate School of the City University of New York, located in New York State.

19.     From the Fall of 1986 to the Fall of 1988, Plaintiff was an instructor of English at Xiamen University Department of Foreign Languages and Literature.  She taught a comprehensive English course – which included training in five basic language skills of listening, speaking, reading, writing and translation - to first year English majors.

20.     In 1995, Plaintiff received a Certificate in Paralegal Studies from Baruch College, located in New York, New York.

21.     From 1996 to 2000, Plaintiff was employed with Sidley Austin LLP as a legal assistant and translator as part of their China Practice Group.  Her responsibilities included translation of various legal documents, assisting in all phases of securities transactions – which included proofreading and revising documents, and assisting in the discovery process, among other tasks.

22.     From 2001 to 2007, Plaintiff was employed with Sidley Austin's Private Client's Group as a Fiduciary Administrator where she drafted client correspondence, memorandums, prepared and filed probate petitions, and prepared estate and trust accountings, among other tasks.

23.     From 2007 to 2019, Plaintiff worked for several other law firms – including Ropes & Gray LLP; Kramer Levin Naftalis & Frankel LLP; and Cleary Gottlieb Steen & Hamilton LLP in

other various capacities, including as a fiduciary administrator, senior estate settlement administrator, and senior paralegal.

24.     In November 2019, Plaintiff started working for Defendant Schulte Roth & Zabel LLP as an Individual Client Services Specialist.

25.     As an Individual Client Services Specialist, Plaintiff's responsibilities included, but were not limited to, preparing and filing probate documents; collecting analyzing and organizing decedent's financial and tax records; identifying assets and liabilities; coordinating asset valuations and appraisals; drafting client correspondence; preparing and filing federal and state estate tax returns; and assisting attorneys with estate planning calculations, among other tasks.

26.     The majority of the Plaintiff's time was spent performing these various tasks for the employer.

**COVID-19 Pandemic and Subsequent Vaccination Mandate**

27.     With the onset of the COVID-19 pandemic, various companies implemented measures to make sure that their employees could continue working.

28.     Defendant Schulte Roth & Zabel LLP instituted a policy that included allowing the Plaintiff to work remotely. From March 2020 to March 2022, Plaintiff was able to work from home.

29.     When Plaintiff worked at the office, she was responsible for preparing and filing probate documents; collecting analyzing and organizing decedent's financial and tax records; identifying assets and liabilities; coordinating asset valuations and appraisals; drafting client correspondence; preparing and filing federal and state estate tax returns; and assisting attorneys with estate planning calculations, among other responsibilities.

30.     While working from home, Plaintiff had the same responsibilities as just noted: preparing and filing probate documents; collecting analyzing and organizing decedent's financial and tax records; identifying assets and liabilities; coordinating asset valuations and appraisals; drafting client correspondence; preparing and filing federal and state estate tax returns; and assisting attorneys with estate planning calculations, among other responsibilities.

31.     When Plaintiff joined the Defendant's firm in November 2019, she spent nearly four months at the office, with the rest of her time working from home.  During her time at the office, prior to the pandemic, Plaintiff infrequently attended client meetings, which usually took place at the onset of a new project.  At the office, Plaintiff would occasionally attend document signings and act as a witness or notary.

32.     Plaintiff recalls that the Defendant had regular department lunch meetings for attorneys and paralegals once or twice a month, which she attended.

33.     Once the pandemic hit, and the staff were allowed to work remotely, while at home, Plaintiff attended one to two client meetings on zoom and a few client meetings by phone.  The regular department meetings were conducted by telephone and occasionally on zoom for people to connect and socialize, which the Plaintiff also attended.

34.     There was a period of time when Plaintiff was permitted to go into the office on a voluntary basis.  Plaintiff had to self-certify, which meant that the Plaintiff would certify that she did not have a fever or any symptoms.  This was a health and safety precaution for the workplace. Self-certification could be done on a mobile application.

35.     In August 2021, the mandate was announced.  In an email dated August 12, 2021 by Denise Kaback, Director of Human Resources for the Defendant, the Plaintiff was told that *"As of Monday, August 16, 2021, we will no longer offer a testing option for unvaccinated individuals.*

*The mandate issued last evening by the Executive Committee requires all individuals who enter any of our offices to be fully vaccinated. Full vaccination does not occur until 14 days after the second/last injection."* **(See Exhibit A)**

36.     As part of the policy, Defendant required that the staff be fully vaccinated.  Plaintiff had to submit documentation of her vaccination status by January 10, 2022.  **(See Exhibit D)**

37.     According to defendant's vaccine policy, if the Plaintiff was not vaccinated, she would not be permitted to return to the office.

38.     Plaintiff was concerned about the Defendant's vaccine mandate as she was a practicing Taoist, and based on her sincerely held religious beliefs, she could not take the COVID-19 vaccine.

39.     Plaintiff was also concerned about taking a new vaccine and the impact it could have on her health.

**Plaintiff's religious accommodation request and Defendant's denial**

40.     The Plaintiff is a practicing Taoist and has adhered to the principles of Taoism for many years.

41.     In Plaintiff's request for religious accommodation, Plaintiff explained that Taoism is an ancient Chinese religion that dates back to the sixth century B.C.  *"Tao Te Ching is a spiritual and philosophical classic filled with ancient wisdom. It is a book on the Tao – the basic principles of the universe, the way of nature, and the Te – a way of living and acting that is guided by and in accord with the Tao."* **(See Exhibit C).**  Tao Te Ching is the "Bible" of Taoism, written by the Sage Lao Tzu.

42.    Taoists are guided by several principles of living, including, but not limited to "Simplicity and Humility" – where a person maintains simplicity and embraces plainness while emphasizing compassion and minimizing material and selfish desires. **(See Exhibit C).**

43.    The most important principle of Taoism is "non-action." "Do nothing and nothing is left undone."  In other words, allow things to take their natural course.

44.    In Plaintiff's religious accommodation request, Plaintiff connected this principle to the idea that modern vaccines like the COVID-19 vaccine is excessive and overreaching, as the vaccine is designed to prevent potential future diseases that are currently absent from the body.

45.    Administering a vaccine to Plaintiff for a disease she did not have is in complete violation of the Taoist faith.

46.    Taoists also believe in complete naturalness, avoiding unnatural influences and returning to a spontaneous way of living. This includes what comes into the body in terms of diet.  Taoists refrain from ingesting alcohol, smoking cigarettes or using drugs, which includes vaccine injections as they interfere with the natural way of living.

47.    According to a paper published on June 19, 2021 in the Journal of Religion and Health entitled "Harmony Between Humanity and Nature: Natural vs. Synthetic Drug Preference in Chinese Atheists and Taoists" by Yu Cao and Heng Li, *"an essential idea for Taoism…is being in harmony with the external natural world.  Within Taoism, human life is only a tiny fraction of the universe and a small piece of a larger process of nature."*

48.    Taoists have a naturalness-is-better bias, and in this particular study that involved Chinese Atheists and Chinese Taoists, *"medicines with natural labels have a high emotional appeal for individuals, especially for religious believers…"*  The authors further noted that *"Since*

*Taoists manifest a more salient naturalness-is-better bias, it means that they may have stronger objections to non-natural medications such as vaccinations against the COVID-19."[1]*

49.     It was the Plaintiff's sincerely held religious belief that taking the COVID-19 vaccine would place her body in an unnatural state, which goes against the teaching of Taoism.

50.     On November 29, 2021, Plaintiff submitted to Defendant her religious exemption. (**See Exhibits B and C**).

**The Interactive Process**

51.     Though Plaintiff studied English in college, the language is still an acquired and learned skill that does not come spontaneously.  Plaintiff grew up and completed her education in China. When she came to this country, her exposure to English was limited to the classroom when she was a student and the workplace as an employee.

52.     Plaintiff's daily life and social circles remain within the Chinese culture.  Though Plaintiff has no problems communicating in English as part of her daily life, there are times when Plaintiff encounters cultural barriers with discussions outside of daily life topics.

53.     On December 6, 2021, the Defendant asked Plaintiff to meet with them and explain her request for a religious exemption; however, trying to explain Taoism in the English language or even in the Chinese language in person to the employer was not an easy task.

54.     Plaintiff was asked to explain her religion in English through a zoom call; however, Plaintiff explained to the Defendant that she could explain her faith better in writing.  Plaintiff explained to Defendant that she studied her religion in an ancient Chinese language written over 2,000 years ago.

---

[1] See Journal of Religion and Health article entitled "Harmony Between Humanity and Nature: Natural vs. Synthetic Drug Preference in Chinese Atheists and Taoists" by Yu Cao and Heng Li; published online June 19, 2021 - https://link.springer.com/article/10.1007/s10943-021-01314-6

55.     Taoism is not something Plaintiff discussed every day.  Thus, in order for her to explain her faith in English, Plaintiff would have to translate the ancient Chinese texts into English and then state them in a way that was understandable for non-Chinese speakers and individuals who are not familiar with Taoism.

56.     Plaintiff believed that the best way to explain her beliefs was to organize her language in writing.  Plaintiff prepared a separate statement describing the Taoist principles that she follows as part of her sincerely held religious beliefs.

57.     Thus, Plaintiff submitted her written statement to Defendant explaining her faith and trusting that her submission would be sufficient. **(See Exhibits B and C)**

58.     Plaintiff's explanation to the Defendant describing the extent of her Taoist beliefs and why it conflicted with her taking any of the COVID-19 vaccines was enough for the Defendant to understand the Plaintiff's faith and why Plaintiff needed an accommodation.

 **Plaintiff's employment termination and aftermath**

59.     Plaintiff received an email from Denise Kaback on December 9, 2021 denying her religious exemption request.  Plaintiff was told that she needed to submit her vaccination status and be "fully vaccinated" by January 10, 2022 or she would be placed on unpaid leave. (**See Exhibit D**).

60.     Plaintiff appealed the Defendant's denial, but on December 15, 2021, Plaintiff's appeal was also denied, followed by a reiteration of Plaintiff's need to submit her vaccination status by January 10, 2022.

61.     Plaintiff could not understand why Defendant would not grant her religious accommodation to continue working remotely, especially since she had already been working remotely for the company.

62.     On December 23, 2021, Plaintiff was informed that with the delay in the firm's mandatory return to office, she could continue working remotely; however, Plaintiff had to be vaccinated by the firm's reopening day (which was March 14, 2022) or she would be placed on unpaid leave.

63.     In and around this same time in December 2021, Plaintiff stopped receiving work assignments from the Defendant.  From December 2021 to March 2022, Plaintiff sent several email correspondences to the Defendant about work that she was available to do for the firm.

64.     Plaintiff stated in several emails that she would welcome assignments from the Defendant; that she was available to do more and that she had not been busy.  Yet the Defendant did not respond with tasks for the Plaintiff to complete.

65.     On March 4, 2022, Plaintiff received a notice of employment termination effective March 14, 2022 – the office reopening day. **(See Exhibit E)**

66.     In the communication sent by Denise Kaback, Director of Human Resources, Defendant stated that *"Pursuant to the Firm's vaccine mandate issued on August 16, 2021, employees are required to be vaccinated against COVID-19 in order to enter our offices.  As you know, we will be returning to the office on March 14, 2022.  To date, you have failed to provide us with proof of vaccination, and accordingly are not in compliance with the Firm's vaccine mandate.  If you receive a vaccination before March 14, 2022, please notify us immediately and send us a copy of your vaccine card.  If you get vaccinated within 45 days after your separation date, the Firm will consider you for rehire if your position has not been filled."* **(See Exhibit E)**

**Difficulty in finding replacement employment**

67.     As a result of losing her job, Plaintiff has endured hardship, particularly when it came to finding replacement employment.

68.     In New York State in particular, many of the companies wanted their new hires to be vaccinated prior to starting the positions available.  Because Plaintiff could not get vaccinated, finding work was challenging.

69.     Starting in March 2022, after Plaintiff was summarily terminated by the Defendant, Plaintiff started applying to various open employment positions.  Plaintiff worked with several employment recruiters to assist her in obtaining replacement employment.

70.     Several recruiters told the Plaintiff upfront that the position required vaccination. For other positions, Plaintiff continued to inquire about employment positions and after asking the recruiter about the vaccination requirement, Plaintiff never heard back from certain recruiters again.

71.     For other open positions, Plaintiff submitted her resume through online websites including LinkedIn and Indeed.com, but Plaintiff received little to no follow up response.  Thus, from March 2022 to December 2022, Plaintiff either submitted her resume and received no response, was told upfront that the position required vaccination, and/or upon inquiring about the vaccination requirement, Plaintiff never heard back again.

72.     On or about December 20, 2022, Plaintiff spoke with a recruiter about a position with another firm; however, even with that position, it took several months before Plaintiff started working for them in May 2023.

**Forced Sale of New Jersey Home**

73.     Second, because the Plaintiff spent several months looking for jobs in New York that did not require her to be vaccinated – yet with no success, Plaintiff decided to place her home for sale and relocate out of New Jersey.

74.     Excess time and energy were spent on trying to sell the home and relocate away from New Jersey. For Plaintiff, much time was spent on addressing her pending relocation that it took away from her available time to find replacement employment.

75.     Both unemployment and the forced sale of a home Plaintiff had for thirteen years only exacerbated Plaintiff's stress and anguish

### Relocation outside of New Jersey State

76.     Employment in New York was difficult to obtain due to the strict vaccine mandates in the state. Many employers wanted new hires to be vaccinated prior to starting a new position. Naturally, this posed a problem for the Plaintiff.

77.     Between March and June 2022, Plaintiff had been searching for employment, but ran into great difficulty.  Without steady employment in the area, Plaintiff decided to leave the area and seek employment out of state.

78.     Plaintiff chose to relocate to Florida because Florida was one of the first states with companies that allowed employees to work without being vaccinated.  In addition, Florida was one of the first states to re-open schools and businesses while banning vaccine passports. Individuals were not required to provide proof of their COVID-19 vaccine status.[2]

79.     During the summer of 2022, Plaintiff listed her home for sale.  While waiting for her home to be sold, Plaintiff continued looking for employment in New York.

---

[2] See Florida Executive Order #21-101- Invalidating All Remaining Local Emergency Orders Based on the COVID-19 Emergency - https://www.flgov.com/wp-content/uploads/orders/2021/EO_21-101.pdf  - Where On May 3, 2021 Governor DeSantis "signed into law SB 2006 – Emergency Management, which provides, effective July 1, 2021, that any emergency order issued by a political subdivision must be narrowly tailored to serve a compelling public health or safety purpose, must be limited in duration, applicability, and scope in order to reduce any infringement on individual rights or liberties to the greatest extent possible, and may be invalidated by the Governor, at any time, if the Governor determines that such order unnecessarily restricts individual rights or liberties".

80.     Though it took several months for the Plaintiff's home to be sold, a buyer was found in or around November 2022.  At that time, Plaintiff told employment recruiters that she would be relocating to Florida and to start looking for possible positions in Florida for Plaintiff to consider.

81.     Plaintiff sought employment opportunities that matched her skill set and did not require her to violate her sincerely held religious beliefs against taking the COVID-19 vaccine. Ultimately, Plaintiff secured a position that met her criteria.

82.     On December 12, 2022, Plaintiff closed on her home and left for Florida on December 13th.

83.     Plaintiff filed a complaint with the U.S. Equal Employment Opportunity Commission and obtained a right to sue letter dated September 18, 2023 for Charge No. #520-2022-04792. **(See Exhibit F)**

## FIRST CAUSE OF ACTION

### Violation of Title VII of the Civil Rights Act of 1964 [42 U.S.C. § 2000e *et seq*.]
### Termination on the Basis of Religion

84.     Plaintiff hereby realleges and incorporates by reference the preceding paragraphs, as though fully set forth herein.

85.     Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq* includes the following definitions:

> *(b) The term "employer" means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person…;*
>
> *…*
>
> *(f) The term "employee" means an individual employed by an employer…*

...

*(j) The term "religion" includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business.*

86.    Pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1):

*It shall be an unlawful employment practice for an employer*

*(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or*

*(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.*

87.    The Defendant Schulte Roth & Zabel LLP qualifies as a covered employer subject to 42 U.S.C. § 2000e *et seq*.

88.    The Plaintiff was at all times relevant herein an employee covered by 42 U.S.C. § 2000e *et seq*., which prohibits discrimination in employment on the basis of religion.

89.    To establish a prima facie case under Title VII, the employee must show that "(1) they held a bona fide religious belief which conflicts with an employment requirement; (2) they informed their employer of this belief; and (3) they were disciplined for failure to comply with the

conflicting employment requirement. *Knight v. Connecticut Department of Public Health*, 275 F. 3d 156, 167 (2d. Cir. 2001); *Baker v. Home Depot*, 445 F.3d 541, 546 (2d Cir. 2006)

90.     The Plaintiff is a practicing Taoist and has been in the faith for many years.

91.     Plaintiff submitted a religious accommodation request on November 29, 2021 to Defendant, explaining that due to her sincerely held religious beliefs, she is unable to take COVID-19 vaccine.

92.     On December 9, 2021, Defendant denied Plaintiff's request and told her at that time that she needed to submit her vaccination status by January 10, 2022, or she would be placed on unpaid leave.

93.     Plaintiff appealed Defendant's denial of her accommodation request, but the appeal was denied on December 15, 2021 with a reiteration that Plaintiff submit her vaccination status by January 10th.

94.     On December 23, 2021, Plaintiff was allowed to continue working remotely due to a delay in the office reopening.

95.     Yet, shortly thereafter, Plaintiff stopped receiving work assignments from the Defendant, despite multiple requests for work between December 2021 and March 2022.

96.     On March 4, 2022, Plaintiff received a notice of termination from the Defendant effective March 14, 2022.

97.     "The Court of Appeals has provided that adverse employment actions under Title VII's substantive anti-discrimination provisions are generally characterized as 'materially adverse changes in the terms and conditions of employment,' including 'termination of employment.'" *Bowles v. New York City Transit Authority*, 285 Fed. Appx. 812, 814 (2d Cir. 2008) (quoting

*Zelnik v. Fashion Institute of Technology*, 464 F.3d 217, 225 (2d Cir. 2006) as cited in *Corrales*,

2023 U.S. Dist. LEXIS 55620 at *15.

98.     Plaintiff's employment termination was effective on March 14, 2022, and as a result of

the termination, Plaintiff experienced difficulty in finding replacement employment as most New

York employers required Plaintiff to be vaccinated.

99.     Plaintiff had to ultimately relocated out of state.

100.    Based on all the above, Plaintiff seeks damages in recovery due to her employment

termination on the basis of her religion.

## SECOND CAUSE OF ACTION

**Violation of Title VII of the Civil Rights Act of 1964 [42 U.S.C. § 2000e *et seq*.]**
**Failure to provide reasonable accommodations/**
**Failure to engage in meaningful cooperative dialogue**

101.    Plaintiff hereby realleges and incorporates by reference the preceding paragraphs, as

though fully set forth herein.

102.    According to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*., it is an

unlawful employment practice to fail or refuse to reasonably accommodate the religious beliefs

and practices of an employee or prospective employee.

103.    In analyzing a Title VII failure to accommodate religious discrimination claim, the

second circuit identifies a two-step inquiry.  The courts must determine "whether an employee

established a prima facie case for failure to accommodate the employee's religion." *Baker*, 445

F.3d at 546; *Knight,* 275 F.3d at167. "If the employee has made the prima facie case and the

employer has not reasonably accommodated the employee, 'the burden then shifts to the

employer to show it could not accommodate the employee's religious beliefs without undue

hardship.'" *Knight*, 275 F.3d at 167; *Baker*, 445 F. 3d at 546 as cited in *Corrales v. Montefiore Medical Center*, 2023 U.S. Dist. LEXIS 55620 *13 (S.D.N.Y. 2023).

104.    During the COVID-19 Pandemic, many companies around New York City instituted COVID-19 policies.  Defendant's policy allowed for the law firm staff to work remotely.

105.    Plaintiff had been working from home for two years and had been very productive for the Defendant.  The tasks she performed at the office were also performed at home.  The meetings that were once performed in the office took place by phone and zoom calls.

106.    After receiving notice of the vaccine mandate, Plaintiff requested a religious accommodation that would allow her to practice her sincerely held religious beliefs while continuing gainful employment.  Since Plaintiff was working remotely from home and the Defendant did not allow unvaccinated personnel in the office, Plaintiff requested that she be allowed to continue her work from home.

107.    In submitting her religious exemption and accommodation requests, Plaintiff provided Defendant with an explanation in writing regarding her Taoist beliefs; however, the Defendant wanted Plaintiff to address her faith through a zoom call with the firm.

108.    Plaintiff expressed discomfort in discussing her faith in English as she believed it would not be understood by the Defendant and that Defendant would use the zoom call as a means of intimidation against Plaintiff.

109.    With English being a second language for Plaintiff, and since she had already provided the Defendant with a thorough explanation of her faith in writing, Plaintiff requested that the Defendant rely on her written submission.

110.    Plaintiff asked that the Defendant consider the documentation provided for her religious

exemption and accommodation request, which outlined Plaintiff's religious objection to taking

the vaccine.

111.    Despite Plaintiff's submissions, Defendant still denied Plaintiff's accommodation

requests.  Defendant did not explain why the religious exemption was denied and/or why Plaintiff

could not remain at home for work.

112.    There would have been no undue hardship on the Defendant to allow Plaintiff to continue

working from home, since Plaintiff had been working remotely for the Defendant for two years.

113.    Plaintiff seeks damages in recovery for Defendant's failure to allow for reasonable

accommodations and failure to engage in meaningful cooperative dialogue with Plaintiff.

## THIRD CAUSE OF ACTION

### Violation of New York Executive Law, Article 15 § 296
### Unlawful discriminatory practices

114.    Plaintiff hereby realleges and incorporates by reference the preceding paragraphs, as

though fully set forth herein.

115.    According to the New York Human Rights Law [New York Executive Law, Article 15 §

296 (10)(a)], *"It shall be an unlawful discriminatory practice for any employer, or an employee*

*or agent thereof, to impose upon a person as a condition of obtaining or retaining employment,*

*including opportunities for promotion, advancement or transfers, or any terms or conditions that*

*would require such person to violate or forego a sincerely held practice of his or her religion,*

*including but not limited to the observance of any particular day or days or any portion thereof as*

*a sabbath or other holy day in accordance with the requirements of his or her religion or the*

*wearing of any attire, clothing, or facial hair in accordance with the requirements of his or her*

*religion, unless, after engaging in a bona fide effort, the employer demonstrates that it is unable*

*to reasonably accommodate the employee's or prospective employee's sincerely held religious*

*observance or practice without undue hardship on the conduct of the employer's business…"*

116.     Plaintiff is a practicing Taoist and has been for many years.  Taking the vaccine violates

Plaintiff's sincerely held religious beliefs against taking things that are not natural. It also violates

her Taoist belief of "non-action" and allowing things to take their natural course.

117.     Upon learning that the Defendant would require all employees to be vaccinated, Plaintiff

submitted a religious exemption request, explaining that pursuant to her sincerely held religious

beliefs, she could not in good conscience take the COVID-19 vaccine.

118.     Defendant denied Plaintiff's request on December 9, 2021 and told her at that time that

she needed to submit her vaccination status by January 10, 2022, or she would be placed on

unpaid leave.

119.     Plaintiff appealed Defendant's denial of her accommodation request, but the appeal was

denied.

120.     In late December 2021, with delays in the office reopening, Plaintiff was allowed to

continue working remotely.

121.     Yet, despite multiple requests for work, Plaintiff stopped receiving assignment between

December 2021 and March 2022.

122.     Communication between the Plaintiff and the Defendant also decreased.

123.     On March 14, 2022, Plaintiff was terminated.

124.     Plaintiff seeks damages against Defendant for engaging in unlaw discriminatory

practices.

### FOURTH CAUSE OF ACTION

**New York City Human Rights Law (NYCHRL) –**
**Administrative Code of the City of New York  §§ 8-101 *et seq***

125.     Plaintiff hereby realleges and incorporates by reference the preceding paragraphs, as though fully set forth herein.

126.     According to the New York City Administrative Code §8-107(3)(a), *"It shall be an unlawful discriminatory practice for an employer or an employee or agent thereof to impose upon a person as a condition of obtaining or retaining employment any terms or conditions, compliance with which would require such person to violate, or forego a practice of, such person's creed or religion, including but not limited to the observance of any particular day or days or any portion thereof as a sabbath or holy day or the observance of any religious custom or usage, and the employer shall make reasonable accommodation to the religious needs of such person."*  "'Reasonable accommodation,'" as used in this subdivision, shall mean such accommodation to an employee's or prospective employee's religious observance or practice as shall not cause undue hardship in the conduct of the employer's business." The employer must show that accommodating the employee would cause a *"significant interference with the safe or efficient operation of the workplace."*  See NYC Admin. Code §8-107(3)(b).

127.     At the beginning of the pandemic, Plaintiff worked from home, and this lasted for two years.

128.     Plaintiff submitted a religious accommodation request on November 29, 2021 to Defendant, explaining that due to her sincerely held religious beliefs, she is unable to take COVID-19 vaccine.

129.     Since Plaintiff was already working from home, she requested an exemption from taking the vaccine and to be permitted to continue working remotely.  Working from home would not have interfered with the Defendant's business.

130.    Plaintiff's initial request was denied on December 9, 2021.  Plaintiff submitted an appeal, which was also denied on December 15, 2021.

131.    Plaintiff had until January 10, 2022 to submit her vaccination status; however, with delays in the office reopening, Plaintiff continued working remotely.

132.    Defendant asked Plaintiff to have a zoom call to discuss her religious exemption request; however, plaintiff had already fully submitted in writing her religious exemption and accommodation request.

133.    From December 2021 to March 2022, Plaintiff requested assignments for work; however, the Plaintiff stopped receiving work assignments from the Defendant.

134.    On March 4, 2022, Plaintiff received a notice of termination from the Defendant effective March 14, 2022.

135.    Plaintiff seeks damages in recovery for unlawful discriminatory practice pursuant to the New York City Administrative Code.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests this Court to grant the following relief:

1.  Declare that Defendant (a) violated Title VII of the Civil Rights Act of 1964 [42 U.S.C. § 2000e *et seq.*] by engaging in unlawful discrimination against Plaintiff, failing to provide reasonable accommodations, and failing to engage in meaningful cooperative dialogue with Plaintiff; (b) violated New York Executive Law, Article 15 § 296 [New York State Human Rights Law]; and violated New York City Human Rights Law, Administrative Code of the City of New York §§ 8-101 *et seq.*;

2.  Award Plaintiff compensatory damages including, but not limited to backpay, front pay, lost benefits, interest, pain and suffering, and emotional distress;

3.  Award Plaintiff all lost promotional pay, including salary increases, raises, bonuses, contributions to pensions; and other sources necessary to live due to loss of income;

4.  Award Plaintiff punitive damages;

5.  Award Plaintiff nominal damages;

6.  Award Plaintiff all other allowable statutory damages;

7.  Award Plaintiff attorneys' fees and cost associated with this cause of action;

8.  Award any other relief as the Court deems just and proper.

Dated:          December 12, 2023
                White Plains, New York

                                              Respectfully Submitted,


                                              __/s/_*Mishael M. Pine*_____
                                              Mishael M. Pine (**Bar #MP2676**)
                                              Staff Attorney
                                              PACIFIC JUSTICE INSTITUTE, INC.
                                              75 South Broadway, Suite 4-9272
                                              White Plains, New York 10601
                                              T: (347) 927-9343
                                              F: (917) 210-3737
                                              Email: mpine@pji.org
                                              *Counsel for Plaintiff*